UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JOSEPH HARTSOCK,<br><br>Plaintiff,<br><br>v.<br><br>INDIANA DEPT OF CORR, et al.,<br><br>Defendants. | CAUSE NO. 3:22-CV-63-JD-MGG |

OPINION AND ORDER

Joseph Hartsock, a prisoner without a lawyer, filed a 275 paragraph[1] amended complaint against twenty-two defendants raising twenty-four claims. ECF 99. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

In Count One, Hartsock alleges PLUS Program Director Tom Stinson and Inmate Clerk Aaron Jordan retaliated against him. ECF 99 at ¶¶ 175-78. "To establish a prima

---

[1] The amended complaint is very similar to the original, but even where the text is the same, the paragraph numbers are frequently different. In some paragraphs of the amended complaint there are references to other paragraphs. Many times, those references were not updated – they continue to cite to the paragraph number of the original complaint. In this opinion, the court cites to the correct paragraphs of the amended complaint even where they were misidentified.

facie case of unlawful retaliation, a plaintiff must show (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (quotation marks omitted). Hartsock alleges Director Stinson announced to more than 100 other inmates they could no longer volunteer to work for hospice if they had already completed the 320 community service hours required for the PLUS program. ECF 99 at ¶ 76. He alleges Director Stinson made the announcement on May 3, 2021, because Hartsock had requested more shifts, raised complaints about shifts, and threatened legal action. *Id*. After making the announcement, he is alleged to have told Hartsock he did it in response to Hartsock's request for a religious exemption. *Id*. at ¶ 78. As a result, more than twenty inmates told Hartsock they were upset with him and one threatened him with physical harm. *Id*. at ¶ 76. These allegations state a claim against Director Stinson who made the announcement, but not against Inmate Clerk Jordan.

Hartsock speculates the two of them conspired to retaliate against him but "mere suspicion that persons adverse to the plaintiff had joined a conspiracy against him or her [i]s not enough." *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009). To state a conspiracy claim, "the plaintiff must meet a high standard of plausibility."[2] *Id*.

---

[2] Hartsock alleges a conspiracy in many of the counts raised in the amended complaint. In none of them has he provided facts sufficient to plausibly show he is entitled to relief. A complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

2

"In order to state a claim under [42 U.S.C.] § 1983 a plaintiff must allege: (1) that defendants deprived him of a federal constitutional right; and (2) that the defendants acted under color of state law." *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006). "The under-color-of-state-law element means that § 1983 does not permit suits based on private conduct, no matter how discriminatory or wrongful." *Spiegel v. McClintic*, 916 F.3d 611, 616 (7th Cir. 2019) (internal quotation marks and citation omitted). While the conduct of private actors can transform them into state actors for § 1983 purposes, the facts must permit an inference "that the deprivation committed by the private actor is 'fairly attributable to the state.'" *L.P. v. Marian Catholic High Sch.*, 852 F.3d 690, 696 (7th Cir. 2017) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). "[M]ere allegations of joint action or a conspiracy do not demonstrate that the defendants acted under color of state law and are not sufficient to survive a motion to dismiss." *Id*. (quoting *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998)). Here, Director Stinson is the *actor* who is alleged to have retaliated by speaking to the group of inmates. Inmate Jordan was not the *actor* who allegedly caused the deprivation. Even if Inmate Jordan was motivated to retaliate against Hartsock, he cannot be considered a State actor because he was not an *actor* who caused Hartsock to suffer a deprivation.

In Count Two, Hartsock alleges the Indiana Department of Correction (IDOC) violated the Religious Land Use and Institutionalized Persons Act (RLUIPA). ECF 99 at

---

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (quotation marks, citations and footnote omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quotation marks and brackets omitted).

3

¶¶ 179-80. RLUIPA provides, "[n]o government shall impose . . . a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person – (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). Hartsock alleges his religious beliefs require he work with hospice patients every night day except the sabbath. ECF 99 at ¶ 60. He alleges he was once allowed to do so. *Id.* at ¶ 66. He alleges he was later banned from working in the hospice program. *Id.* at ¶ 67. These allegations state a claim for injunctive relief. *See Sossamon v. Texas*, 563 U.S. 277, 285 (2011) (RLUIPA does not allow money damages against state officials – only injunctive relief).

In Count Three, Hartsock alleges PLUS Program Director Tom Stinson, Correctional Officer Jennifer Christian-Tague, and Inmate Clerk Aaron Jordan retaliated against him for his First Amendment activities by searching his property. ECF 99 at ¶¶ 181-84. Retaliatory searches can state a claim if they are significantly different than routine, random searches. *See Sobin v. Lowry*, 2016 WL 2643456 (N.D. Ind. 2016) (alleging repeated searches which lasted longer and caused more damage than ordinary searches). Hartsock acknowledges he was subject to being randomly searched. ECF 99 at ¶ 81. Because all inmates expect to be randomly searched, he has not plausibly alleged a single non-random search would "dissuade a reasonable person from engaging in future First Amendment activity." *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015). "Prisoners may be required to tolerate more than public employees, who

4

may be required to tolerate more than average citizens, before an action taken against them is considered adverse." *Douglas v. Reeves*, 964 F.3d 643, 648 (7th Cir. 2020).

In Count Four, Hartsock alleges PLUS Program Director Tom Stinson, Correctional Officer Jennifer Christian-Tague, and Inmate Clerk Aaron Jordan retaliated against him for his First Amendment activities by filing conduct report WCC-21-05-90. ECF 99 at ¶¶ 185-88. He alleges Officer Christian-Tague fraudulently asserted she found a crochet hook in his property box on May 5, 2021. *Id*. at ¶ 85. He alleges she did this because he was "complaining about how the PLUS and hospice [wa]s being run . . .." *Id*. at ¶ 83. Only she is alleged to have written conduct report WCC-21-05-90. *Id*. at ¶ 86. He speculates Director Stinson and Inmate Jordan conspired with her to search his property before the crochet hook was allegedly found by her. *Id*. at ¶ 88. These allegations state a claim against Officer Christian-Tague, but not the other defendants because "mere suspicion [is] not enough." *Cooney*, 583 F.3d at 971.

In Count Five, Hartsock alleges PLUS Program Director Tom Stinson, Correctional Officer Jennifer Christian-Tague, and Inmate Clerk Aaron Jordan also violated his due process rights by filing the false conduct report (WCC-21-05-90) discussed in Count Four. ECF 99 at ¶¶ 185-88. In Count Seventeen,[3] Hartsock alleges Correctional Officer Margarita Velazquez and Assistant Deputy Warden Kenneth Watts

---

[3] Count Eighteen is combined with Count Seventeen and is based on the same facts but alleges a First Amendment retaliation claim. ECF 99 at ¶¶ 226-37. However, neither Count Eighteen nor the supporting paragraphs of the complaint provide the factual basis for a retaliation claim against Officer Velazquez or Warden Watts based on WCC-21-05-90. *See id.* at ¶¶ 82-103. Count Eighteen closes by merely asserting "Defendants Margarita Velazquez and Kenneth Watts violated Plaintiff's Fourteenth Amendment rights . . .." *Id*. at 237. Count Eighteen does not state a retaliation claim.

5

violated his due process rights in connection with the prison disciplinary proceeding for that conduct report. *Id*. at ¶¶ 226-37. In Count Twenty-One,[4] he alleges Correctional Officer Nash and Warden Watts violated his due process rights in connection with the rehearing of that conduct report. *Id*. at 249-58.

"[A]n allegation that a prison guard planted false evidence which implicates an inmate in a disciplinary infraction fails to state a claim for which relief can be granted where the procedural due process protections as required in *Wolff v. McDonnell* are provided." *Hanrahan v. Lane*, 747 F.2d 1137, 1141 (7th Cir. 1984). Hartsock alleges he was denied *Wolff's* due process protections. ECF 99 at ¶¶ 90-103. However, *Wolff* only requires due process before the loss of a liberty interest. *Sandin v. Conner*, 515 U.S. 472, 487 (1995). Hartsock did not suffer such a loss. *See Hartsock v. Warden*, 3:21-cv-732 (N.D. Ind. filed September 29, 2021) (habeas corpus challenge to WCC-21-05-90 dismissed pursuant to Habeas Corpus Rule 4 because he did not lose any earned credit time). Because *Wolff* did not require due process, the allegations in Counts Five, Seventeen, and Twenty-One do not state claims.

In Count Six, Hartsock alleges Health Services Administrator Dorothy Livers, Director of Nursing Michelle Rebac, Wexford Health Sources, Inc., and Wexford of Indiana, LLC, retaliated against him for his First Amendment activities by filing conduct report WCC-21-05-91. ECF 99 at ¶¶ 189-92. He alleges Director Rebac wrote a

---

[4] Count Twenty-One mentions First Amendment Retaliation in its title, but neither this Count nor the supporting paragraphs of the complaint provide the factual basis for a retaliation claim against Officer Nash or Warden Watts based on WCC-21-05-90. *See* ECF 99 at ¶¶ 104-109. This Count closes by merely asserting "Defendants C/O Nash and Kenneth Watts violated Plaintiff's Fourteenth Amendment rights . . .." ECF 99 at 258. Count Twenty-One does not state a retaliation claim.

6

false conduct report fraudulently asserting he tried to bribe Administrator Livers on May 5, 2021. *Id*. at ¶¶ 110, 111, and 113. He alleges it was because of his grievances "concerning the unsafe nature of how Hospice was being run." *Id*. at ¶ 114. These allegations state a claim against Director Rebac, but not the other defendants.

Hartsock alleges Administrator Livers neither wrote nor signed the conduct report. *Id*. at ¶ 115. Merely because her name and purported signature were on the conduct report does not make her liable to Hartsock since he alleges she did not write or sign it.

Hartsock alleges Wexford did not have a policy prohibiting retaliation.[5] *Id*. at ¶ 191. He alleges Wexford had "a policy, practice, or custom of First Amendment retaliation against inmates who exercised their First Amendment activities, so much that Plaintiff had received a conduct report less than one year prior for complaining about health care provided to him, which was eventually dismissed." *Id*. Though he asserts Wexford had a policy, he has not plausibly alleged any facts showing such a policy existed. Rather, the fact he alleges about the prior conduct report relate to a practice or custom.

> Claims not involving an allegation that the municipal action itself violated federal law, or directed or authorized the deprivation of federal rights, present much more difficult problems of proof. That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the employee acted

---

[5] A private company performing a state function can be held liable to the same extent as a state actor under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). *Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012) (*Monell* framework applies to private company providing medical care at prison).

7

> culpably. We recognized these difficulties in *Canton v. Harris*, where we considered a claim that inadequate training of shift supervisors at a city jail led to a deprivation of a detainee's constitutional rights. We held that, quite apart from the state of mind required to establish the underlying constitutional violation—in that case, a violation of due process—a plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with deliberate indifference as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice.

*Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 406–07 (1997) (quotation marks and citations omitted). Thus, "the path to *Monell* liability based on inaction is steeper because, unlike in a case of affirmative municipal action, a failure to do something could be inadvertent and the connection between inaction and a resulting injury is more tenuous. For these reasons, where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *J.K.J. v. Polk Cty.*, 960 F.3d 367, 378 (7th Cir. 2020) (en banc) (quotation marks, brackets, and citation omitted).

"*Monell* liability is difficult to establish precisely because of the care the law has taken to avoid holding a municipality responsible for an employee's misconduct. A primary guardrail is the threshold requirement of a plaintiff showing that a municipal policy or custom caused the constitutional injury." *J.K.J. v. Polk Cty.*, 960 F.3d 367, 377 (7th Cir. 2020), (en banc). Here, Hartsock has not plausibly alleged Wexford was deliberately indifferent to First Amendment retaliation by its employees.

In Count Seven, Hartsock alleges Health Services Administrator Dorothy Livers, Director of Nursing Michelle Rebac, Wexford Health Sources, Inc., and Wexford of Indiana, LLC, also violated his Substantive Due Process rights by filing the false conduct report (WCC-21-05-91) discussed in Count Six. ECF 99 at ¶¶ 189-92. In Count Nineteen,[6] Hartsock alleges Correctional Officer Margarita Velazquez and Assistant Deputy Warden Kenneth Watts violated his due process rights in connection with prison disciplinary proceeding for that conduct report. *Id*. at ¶¶ 238-248. For the reasons explained in the discussion of Counts Five, Seventeen, and Twenty-One, Hartsock was not entitled to due process because he did not suffer such a loss. *Id*. at ¶ 122, *see also Hartsock v. Warden*, 3:21-cv-625 (N.D. Ind. filed August 23, 2021) (habeas corpus challenge to WCC-21-05-91 dismissed pursuant to Habeas Corpus Rule 4 because he did not lose any earned credit time). Because *Wolff* did not require due process, the allegations in Count Seven and Nineteen do not state claims.

In Count Eight, Hartsock alleges PLUS Program Director Tom Stinson, Assistant Deputy Warden Kenneth Watts, and Inmate Clerk Aaron Jordan retaliated against him for his First Amendment activities by removing him from working in the hospice program. ECF 99 at ¶¶ 193-96. In Count Ten, he alleges they and Correctional Officer Christian-Tague retaliated against him by removing him from the PLUS program. *Id*. at

---

[6] Count Twenty is combined with Count Nineteen and is based on the same facts but alleges a First Amendment retaliation claim. ECF 99 at ¶¶ 238-48. However, neither Count Twenty nor the supporting paragraphs of the complaint provide the factual basis for a retaliation claim against Officer Velazquez or Warden Watts based on WCC-21-05-91. *See id.* at ¶¶ 110-25. Count Twenty closes by merely asserting "Defendants Margarita Velazquez and Kenneth Watts violated Plaintiff's Fourteenth Amendment rights . . .." *Id*. at 248. Count Twenty does not state a retaliation claim.

9

¶¶ 201-04. These are functionally identical claims stated in slightly different ways because hospice is one of several parts of the PLUS program. *Id*. at ¶ 71.

Hartsock alleges Director Stinson told him he met with Warden Watts on May 3, 2021, to discuss Hartsock's complaints and how to remove him from the PLUS program. *Id*. at ¶ 74. Hartsock alleges Warden Watts, as Director Stinson's supervisor, "condoned and/or helped facilitate the First Amendment retaliation . . .." *Id.* He alleges Director Stinson removed him from the hospice program hours later. *Id*. at ¶ 71. He alleges "[t]he negative 3380 job/work evaluation authored by Stinson [was] the basis for Plaintiff's removal from the PLUS program . . .." *Id*. at ¶ 132. He speculates Inmate Aaron Jordan conspired with them. *Id*. at ¶¶ 195 and 203. These allegations state a claim against Director Stinson and Warden Watts, but not Officer Christian-Tague because there is no allegation she was involved in the negative evaluation which resulted in his removal from these programs. Neither do they state claims against Inmate Jordan because "mere suspicion [is] not enough." *Cooney*, 583 F.3d at 971.

In Count Nine, Hartsock alleges PLUS Program Director Tom Stinson, Assistant Deputy Warden Kenneth Watts, and Inmate Clerk Aaron Jordan retaliated against him for his First Amendment activities by prohibiting him from "wearing his hat and prescription eyeglasses to accommodate his physical disability which allowed him to participate in PLUS program classes and utilize the Offender Television Network . . .." ECF 99 at ¶ 198. Hartsock says he has severe photo sensitivity and cannot "read the chalkboard or see the videos playing" without these accommodations. *Id*. at ¶ 73. Hartsock alleges Director Stinson denied him these accommodations on May 3, 2021. *Id*.

10

Unlike the allegations in Count Eight, Hartsock does not allege Director Stinson talked to Warden Watts about this alleged act of retaliation. These allegations state a claim against Director Stinson, but not the other two defendants because "mere suspicion [is] not enough." *Cooney*, 583 F.3d at 971.

In Count Eleven, Hartsock alleges Assistant Deputy Warden Kenneth Watts retaliated by threatening to transfer him to another prison to moot any possible injunctive relief claim he might have arising out of being transferred to a different housing unit at the Westville Correctional Facility. ECF 99 at ¶¶ 205-07. "Watts told plaintiff that if he filed a grievance or lawsuit about it 'someone' would just 'transfer me to a different prison' so I 'would not get the [injunctive] relief [I am seeking.]'" *Id*. at ¶ 126 (brackets in original). This allegation states a claim against Warden Watts in his individual capacity for monetary damages, but it does not state a claim for injunctive relief because Hartsock is no longer at the Westville Correctional Facility. *See* ECF 92 (Hartsock moved to Putnamville Correctional Facility) and *Hartsock v. IDOC*, 3:22-cv-303 (N.D. Ind. filed April 15, 2022) (preliminary injunction ordered Hartsock be protected from fellow inmates at Westville because he was a "widely disliked and vulnerable" inmate).

In Count Twelve, Hartsock alleges IDOC Commissioner Robert Carter, Jr., IDOC Executive Director of Classification Jack Hendrix, IDOC Legal Services Director Robert Bugher, IDOC Classification Supervisor Jennifer Farmer, Deputy Warden Dawn Buss, IDOC Deputy Commissioner James Bassinger, PLUS Program Director Tom Stinson, Assistant Deputy Warden Kenneth Watts, Inmate Clerk Aaron Jordan, and Correctional

11

Officer Christian-Tague violated the Eighth Amendment[7] "when they placed Plaintiff in a state created danger" by moving him to GSC. ECF 99 at ¶ 210 (emphasis omitted); *See generally Id*. at ¶¶ 208-11.

Under the Eighth Amendment, correctional officials have a constitutional duty to protect inmates from violence. *Farmer v. Brennan*, 511 U.S. 825, 844 (1994). "[P]risons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). A failure to protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). "[T]he fact that an inmate sought and was denied protective custody is not dispositive of the fact that prison officials were therefore deliberately indifferent to his safety." *Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997). Instead, the plaintiff must establish that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010).

> To establish deliberate indifference on the part of the defendants sued individually, Klebanowski needed to show that the officers acted with the equivalent of criminal recklessness, in this context meaning they were actually aware of a substantial harm to Klebanowski's health or safety, yet failed to take appropriate steps to protect him from the specific danger. Klebanowski testified during his deposition that he told officers twice on September 8 that he was afraid for his life and he wanted to be transferred

---

[7] In Count Twelve, Hartsock also alleges they violated his substantive due process rights. ECF 99 at 211. Where a constitutional amendment "provides an explicit textual source of constitutional protection against . . . governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham v. Connor*, 490 U.S. 386, 395 (1989). Because failure to protect claims are properly analyzed under the Eighth Amendment, these allegations do not state a substantive due process claim.

12

>off the tier. Those statements, and the officers' knowledge of the first beating, are the only pieces of evidence in the record that can assist Klebanowski in his attempt to show that the officers were aware of any risk to him. We have previously held that statements like those made by Klebanowski are insufficient to alert officers to a specific threat. *Butera*, 285 F.3d at 606 (deeming insufficient to establish deliberate indifference statements by a prisoner that he was "having problems in the block" and "needed to be removed"). In *Butera*, we deemed the inmate's statements insufficient to give notice to the officers because they did not provide the identities of those who threatened the inmate, nor state what the threats were. *Id*.
>
>The facts of this case make clear our reason for requiring more than general allegations of fear or the need to be removed. By Klebanowski's own testimony, the officers knew only that he had been involved in an altercation with three other inmates, and that he wanted a transfer because he feared for his life. He did not tell them that he had actually been threatened with future violence, nor that the attack on September 8 was inflicted by gang members because of his non-gang status. Without these additional facts to rely on, there was nothing leading the officers to believe that Klebanowski himself was not speculating regarding the threat he faced out of fear based on the first attack he suffered. This lack of specificity falls below the required notice an officer must have for liability to attach for deliberate indifference.

*Klebanowski v. Sheahan*, 540 F.3d 633, 639-40 (7th Cir. 2008) (footnote omitted).

Hartsock alleges the defendants "know from all the incident reports, conduct reports, grievances, complaints, and request for protection filed by inmates in GSC, as well as staff threatening to send inmates to GSC if they don't like them, that GSC is a state created danger." ECF 99 at ¶ 126 (emphasis omitted). The complaint alleges the defendants were aware of the general risks of violence, but does not plausibly allege any of the defendants had actual knowledge of an impending harm easily preventable before Hartsock was injured in GSC.

13

In Count Thirteen, Hartsock alleges Director Stinson and Inmate Clerk Jordan retaliated against him with a negative job evaluation as a pretext for removing him from the PLUS program. ECF 99 at ¶¶ 212-15. The allegation about a negative job evaluation being a pretext for his removal does not state an independent claim. Rather, it is a factual allegation supporting his claims that he was removed from hospice and the PLUS program in retaliation for his First Amendment activities. Since Hartsock is proceeding on those functionally identical claims in Counts Eight and Ten, he would gain nothing by also proceeding on this underlying allegation separately.

In Count Fourteen, Hartsock alleges PLUS Program Director Tom Stinson, PLUS Program Director B. Whittinghill, IDOC Commissioner Robert Carter, Jr., IDOC Executive Director of Classification Jack Hendrix, IDOC Legal Services Director Robert Bugher, IDOC Classification Supervisor Jennifer Farmer, IDOC Classification Supervisor Derek Christian, IDOC Education Executive Director Dr. John Nally, Deputy Warden Dawn Buss, IDOC Deputy Commissioner James Basinger, Westville Correctional Facility Warden John Galipeau, Assistant Deputy Warden Kenneth Watts, and Inmate Clerk Aaron Jordan retaliated against him by preventing him from being re-admitted to the PLUS program. ECF 99 at ¶¶ 216-19. Hartsock alleges he "reapplied to PLUS program in October and November 2021, [but was rejected] despite meeting WCC's PLUS program eligibility requirements . . .." *Id.* at ¶ 150. He alleges he was told the admission decisions are made by Warden Watts. *Id*. at ¶ 151. These allegations state a claim against Warden Watts, but not the other defendants because "mere suspicion [is] not enough." *Cooney*, 583 F.3d at 971.

14

In Count Fifteen, Hartsock alleges Deputy Warden Dawn Buss, IDOC Executive Director of Classification Jack Hendrix, IDOC Classification Supervisor Jennifer Farmer, IDOC Education Executive Director Dr. John Nally, IDOC Legal Services Director Robert Bugher, IDOC Classification Supervisor Derek Christian, and IDOC Deputy Commissioner James Basinger retaliated against him by not intervening to have him reinstated to the PLUS program. ECF 99 at ¶¶ 220-22. Hartsock alleges he wrote to them, but they would not intercede. *Id.* at ¶¶ 138 and 139. The "view that everyone who knows about a prisoner's problem must pay damages implies that he could write letters to the Governor . . . and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not [resolve the problem]. That can't be right." *Burks v. Raemisch*, 555 F.3d 592, 593 (7th Cir. 2009). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Id.* at 596. "Only persons who cause or participate in the violations are responsible." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007).

In Count Sixteen, Hartsock alleges the Indiana Department of Correction, IDOC Commissioner Robert Carter, Jr., IDOC Executive Director of Classification Jack Hendrix, IDOC Legal Services Director Robert Bugher, and IDOC Deputy Commissioner James Basinger retaliated against him by enforcing IDOC Policy 00-02-301: the IDOC grievance policy. ECF 99 at ¶¶ 223-25. Hartsock alleges the grievance policy is being uniformly enforced to prevent all inmates from successfully filing grievances. *Id.* at ¶ 160. This count does not state a claim because the uniform

15

enforcement of the policy shows "the action would have been taken anyway, independently of any retaliatory animus." *Hartman v. Moore*, 547 U.S. 250, 261 (2006).

In Count Twenty-Two, Hartsock alleges the Indiana Department of Correction violates due process by systematically prohibiting in-person witnesses during prison disciplinary hearings. ECF 99 at ¶¶ 259-61. In Count Twenty-Three, he allege it violates due process by systematically withholding exculpatory evidence. *Id.* at 262-64. Hartsock lacks standing to bring these claims.

> Our cases have established that the 'irreducible constitutional minimum' of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element."

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), (quotation marks, citations and ellipsis omitted). Hartsock points to his prison disciplinary proceedings in WCC-21-05-90 and WCC-21-05-91, but as previously explained, he was not entitled to due process in those cases. Therefore, he has not alleged he has suffered an injury related to the claims in Counts Twenty-Two or Twenty-Three.

In Count Twenty-Four, Hartsock alleges the Indiana Department of Correction, IDOC Commissioner Robert Carter, Jr., Warden John Galipeau, Assistant Deputy Warden Kenneth Watts, IDOC Deputy Commissioner James Basinger, Final Reviewing Authority Elise Gallagher, and IDOC Legal Services Director Robert Bugher failed to supervise and train Correctional Officers Margarita Velazquez and Nash. ECF 99 at ¶

16

265-69. Failure to train and supervise claims can only be brought against a municipality. *Sanville v. McCaughtry*, 266 F.3d 724, 739–40 (7th Cir. 2001) *citing Farmer v. Brennan*, 511 U.S. 825, 841 (1994) (affirming dismissal of failure to train and supervise claims brought against State warden). None of these defendants are a municipality.

For these reasons, the court:

(1) GRANTS Joseph Hartsock leave to proceed on Count One against PLUS Program Director Tom Stinson in his individual capacity for compensatory and punitive damages for retaliating against him in violation of the First Amendment on May 3, 2021, by telling more than 100 other inmates they could no longer volunteer to work for hospice if they had already completed the 320 community service hours required for the PLUS program because Hartsock had requested more shifts, raised complaints about shifts, threatened legal action, and requested a religious exemption;

(2) GRANTS Joseph Hartsock leave to proceed on Count Two against the Indiana Department of Correction to obtain a permanent injunction, if required by the Religious Land Use and Institutionalized Persons Act, to permit him to work with hospice patients every day except the sabbath;

(3) GRANTS Joseph Hartsock leave to proceed on Count Four against Correctional Officer Jennifer Christian-Tague in her individual capacity for compensatory and punitive damages for retaliating against him in violation of the First Amendment by filing conduct report WCC-21-05-90 which fraudulently asserted she found a crochet hook in his property box on May 5, 2021, because he complained about how the PLUS and hospice programs were being run;

17

(4) GRANTS Joseph Hartsock leave to proceed on Count Six against Director of Nursing Michelle Rebac in her individual capacity for compensatory and punitive damages for retaliating against him in violation of the First Amendment by filing conduct report WCC-21-05-91 which fraudulently asserted he tried to bribe Administrator Livers on May 5, 2021, because of his complaints about the unsafe nature of how Hospice was being run;

(5) GRANTS Joseph Hartsock leave to proceed on Count Eight and Ten against PLUS Program Director Tom Stinson and Assistant Deputy Warden Kenneth Watts in their individual capacities for compensatory and punitive damages for retaliating against him in violation of the First Amendment by removing him from the hospice and PLUS programs on May 3, 2021, because he requested more shifts, raised complaints about shifts, threatened legal action, and requested a religious exemption;

(6) GRANTS Joseph Hartsock leave to proceed on Count Nine against PLUS Program Director Tom Stinson in his individual capacity for compensatory and punitive damages for retaliating against him in violation of the First Amendment by prohibiting him from wearing his hat and prescription eyeglasses to accommodate his physical disability on May 3, 2021, because he requested more shifts, raised complaints about shifts, threatened legal action, and requested a religious exemption;

(7) GRANTS Joseph Hartsock leave to proceed on Count Eleven against Assistant Deputy Warden Kenneth Watts in his individual capacity for compensatory and punitive damages for retaliating against him in violation of the First Amendment by threatening to transfer him to another prison to moot any possible injunctive relief

claim if he filed a grievance or lawsuit about being transferred to a different housing unit at the Westville Correctional Facility because he requested more shifts, raised complaints about shifts, threatened legal action, and requested a religious exemption;

(8) GRANTS Joseph Hartsock leave to proceed on Count Fourteen against Assistant Deputy Warden Kenneth Watts in his individual capacity for compensatory and punitive damages for retaliating against him in violation of the First Amendment by preventing him from being re-admitted to the PLUS program because he requested more shifts, raised complaints about shifts, threatened legal action, and requested a religious exemption;

(9) DISMISSES all other claims;

(10) DISMISSES Robert Carter, Jr., John Galipeau, John Nally, Jack Hendrix, Jennifer Farmer, Dawn Buss, James Basinger, Robert Bugher, Margarita Velazquez, Nash, B. Whittinghill, Elise Gallagher, Derek Christian, Dorothy Livers, Wexford Health Sources, Inc., Wexford of Indiana, LLC, and Aaron Jordan;

(11) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Director of Nursing Michelle Rebac at Wexford of Indiana, LLC, with a copy of this order and the amended complaint (ECF 99);

(12) ORDERS Wexford of Indiana, LLC, to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(13) **ORDERS**, under 42 U.S.C. § 1997e(g)(2), the Indiana Department of Correction, PLUS Program Director Tom Stinson, Assistant Deputy Warden Kenneth Watts, Correctional Officer Jennifer Christian-Tague, and Director of Nursing Michelle Rebac to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on February 21, 2023

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT